UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIONEL MICHAEL KING,

                              Plaintiff,

            v.

M.T. PUERSHNER, *et al.*,

                              Defendants.

No. 17-CV-1373 (KMK)

OPINION & ORDER

Appearances:

Lionel M. King
Napanoch, NY
*Pro Se Plaintiff*

Janice Powers, Esq.
New York State Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Lionel Michael King ("Plaintiff"), currently an inmate at Eastern Correctional Facility,

brings this pro se Action, pursuant to 42 U.S.C. § 1983, against several prison officials at

Sullivan Correctional Facility ("Sullivan") — Correction Officers M.T. Puershner ("Puershner"),

M. Mokowski ("Mokowski"), Slater ("Slater"), Daddezio ("Daddezio"), and Stauch ("Stauch");

Sergeants Beach ("Beach") and Barlow ("Barlow"); and Nurse Carol Chiocchi ("Nurse

Chiocchi") (collectively, "Defendants").  Plaintiff alleges that, while incarcerated at Sullivan, he

was assaulted and thereafter denied adequate medical treatment, in violation of his rights under

the Eighth Amendment.  (*See generally* Compl. (Dkt. No. 1).)  Before the Court is Defendants'

Motion for Summary Judgment (the "Motion").  (Not. of Mot. (Dkt. No. 71).)  For the reasons

that follow, the Motion is granted. However, Plaintiff is granted leave to amend his Complaint

to add a claim of sexual assault.

## I. Background

### A. Factual Background

The following facts are drawn from Defendant's statement pursuant to Local Civil Rule

56.1, (Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 96)), Plaintiff's Complaint,

(Compl. (Dkt. No. 1)), and the admissible evidence submitted by the Parties.[1] The Court

recounts only those facts necessary for consideration of the instant Motion.

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same). "A pro se litigant is not excused from this rule." *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (citation and italics omitted).

Here, Defendants filed and served their 56.1 Statement, in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2. (Dkt. Nos. 95, 96.) Plaintiff failed to submit a response to the 56.1 Statement. Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted), to determine if any admissible facts in the Complaint or record contradict Defendants' 56.1 Statement, *see Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response (citation omitted)).

1.  Assault and Medical Treatment

On September 15, 2015, Plaintiff was an inmate at Sullivan, a prison managed by the New York State Department of Correction and Community Supervision ("DOCCS"). (Defs.' 56.1 ¶ 1; Compl. 2.)[2] At about 2:15 p.m. that day, Plaintiff was returning to his housing unit when he was stopped by Sergeant LeConey, a non-party prison official, and placed in handcuffs on the ground that a weapon — later identified as an ice pick — had been found in his cell. (Defs.' 56.1 ¶ 4; Compl. 5; Deposition of Lionel King ("King Dep.") 42–44 (Dkt. No. 72-5).) Plaintiff immediately believed that he "was being set-up in retaliation for numerous complaints and grievances [he] had lodged against officers assigned to the block." (Compl. 5.) Plaintiff was escorted to the "draft room" by LeConey, Defendant Daddezio, and others. (*Id.*; King Dep. 45–46.) While in the draft room, Plaintiff "was made to stand facing a wall with two [unnamed] officers [on] either side threat[en]ing to harm [him] if [he] did not" stay quiet. (Compl. 5.) Plaintiff, who wears a pacemaker, "began having chest pains," and his "knees gave out due to . . . being forced to stand facing a wall for a long period of time." (*Id.*; Defs.' 56.1 ¶ 5.)

---

Further, although "a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment," *Almonte v. Florio*, No. 02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004) (citation and italics omitted), where a plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," the "verified complaint is to be treated as an affidavit for summary judgment purposes," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Here, the Complaint includes a signed and dated verification page stating that Plaintiff declares the contents of those filings to be true under the penalty of perjury. (Compl. 10.) The Court will thus consider all admissible facts set forth in the Complaint that are based on Plaintiff's personal knowledge and about which Plaintiff is competent to testify. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 3239850, at *1 n.3 (S.D.N.Y. July 18, 2019) (collecting cases in which courts have considered admissible facts set forth in a pro se plaintiff's complaint in deciding a motion for summary judgment).

[2] Plaintiff's filings lack consistent pagination. For ease of reference, the Court cites to the ECF-generated page numbers at the top of each page when citing Plaintiff's submissions.

Plaintiff was thereafter "moved from the draft room to the infirmary" by Defendants Barlow, Puershner, and Mokowski. (Compl. 5; King Dep. 62.) Upon arrival in the infirmary, they were met by Defendant Slater. (Compl. 5.) Plaintiff, who was still handcuffed, was placed in a chair, whereupon Slater "placed his booted foot in the center of [Plaintiff's] chest and pushed [him] backward out of the chair." (Compl. 5; King Dep. 63–64.) Plaintiff was "dragged to [his] feet by" Puershner and Mokowski, placed on a gurney, and choked "for a few seconds." (Compl. 5; King Dep. 64–67.) Plaintiff was "slapped in the face twice by . . . Daddezio." (Compl. 5.) Barlow "did nothing to stop the" assault. (*Id.* at 5–6.)

Plaintiff was then seen by a nurse, who did not provide him with "medical attention other than [taking his] blood pressure," after which he was escorted to the Office of Mental Health ("OMH") "to be placed on suicide watch," even though Plaintiff never "indicate[d] to anyone that [he] was going to hurt [him]self." (*Id.* at 6; Defs.' 56.1 ¶ 7.) While in an elevator being escorted to OMH, Plaintiff "was hit in the back of the head" by Puershner and/or Barlow, causing him to fall to his knees. (Compl. 6; King Dep. 70–71.) He was "dragged by the legs" out of the elevator, "which caused the right side of [his] head to hit the floor." (Compl. 6; King Dep. 71–72.) When Plaintiff was lifted up, Puershner and Barlow took him to a room used "for one-to-one [mental health] monitoring" and removed his handcuffs by "ben[ding] [his] wrist in a way to cause pain to shoot up into [his] shoulder." (Compl. 6; King Dep. 73–76.) Puershner and Barlow then "held [Plaintiff] down" and "began ripping off [his] cloth[e]s," including his pants and "jockstrap," thus causing Plaintiff to "fear[] [that he] was about to be sexually assaulted." (Compl. 6.) Yet, Plaintiff also alleges, "[h]owever, after [his] cloth[e]s were removed," Barlow, Puershner, and Mokowksi "left the room." (*Id.*)

On September 16, 2015, Plaintiff awoke in the infirmary with pain and bruises "all over [his] body." (Defs.' 56.1 ¶ 8; Compl. 6; *see also id.* at 4 (further describing Plaintiff's alleged injuries).) At about 8:00 a.m., Nurse Chiocchi "came to the unit," and Plaintiff told her that he was assaulted. (Defs.' 56.1 ¶ 9; Compl. 6.) However, despite Plaintiff's "vis[i]ble bruises and swelling," Nurse Chiocchi "provided no medical attention." (Compl. 6.) According to Nurse Chiocchi, however, she "did not observe any visible injuries" and, Plaintiff "refused breakfast and so [she] decided in [her] professional medical judgment to hold the insulin until he decided to eat," and Plaintiff "accepted his other medications." (Decl. of Carol Chiocchi, R.N. ("Chiocchi Decl.") ¶ 4 (Dkt. No. 72-3).)

At about 10:00 a.m., Lieutenant Maxwell ("Maxwell"), not a party to this case, came to the infirmary and asked Plaintiff about the weapon allegedly found in his cell. (Defs.' 56.1 ¶ 9; Compl. 6.; King Dep. 43–44, 80.) Plaintiff told Maxwell that he was being set up and that he was assaulted by prison officials. (Defs.' 56.1 ¶ 10; Compl. 6.) Maxwell ordered a medical assessment. (Defs.' 56.1 ¶ 10; Compl. 6.)

At about 10:30 a.m., Nurse Chiocchi conducted a medical assessment and administered Tylenol to Plaintiff. (Defs.' 56.1 ¶¶ 11–12; Compl. 4; King Dep. 82–91; Chiocchi Decl. ¶ 5.) Plaintiff alleges that Nurse Chiocchi "knew or should have known that" he could not take Tylenol "because of the other medication [he] was taking" for his heart." (Compl. 4.) However, according to Nurse Chiocchi, "Tylenol was prescribed because it does not interact with cardiac medications." (Chiocchi Decl. ¶ 5.) Indeed, Plaintiff acknowledges that Tylenol was the only medication he could receive. (King Dep. 91.)

Separately, Plaintiff alleges that Nurse Chiocchi "made false statement[s] in the [a]mbulatory report, averring that there [was] no swellin[g] or bruising," (Compl. 4), and that photographs taken by Officer Favre, a non-party to this case, contradict the report, (*id.*).

Finally, Plaintiff alleges that, at about 10:45 a.m., Defendants Beach and Stauch, along with Puershner, escorted Plaintiff to the Special Housing Unit. (Compl. 4.) Plaintiff requested a wheelchair, but they refused and "drag[ged] [Plaintiff] out of the room" and "forced [him] to walk." (*Id.*)

## 2. Grievances

Subsequent to these events, Plaintiff filed three grievances. (Defs.' 56.1 ¶ 14; Compl. 7; King Dep. 101.) All three grievances were assigned a "code 49," which indicates an allegation of staff misconduct, and thus sent directly to the Sullivan superintendent for investigation. (Defs.' 56.1 ¶ 15; Proscia Decl. ¶ 5.)

The first grievance, SUL-22176-15, dated September 29, 2015, describes many of the facts alleged above, and in particular alleges that Puershner and Stauch physically assaulted Plaintiff and that an unnamed nurse failed to treat Plaintiff's complaints of pain. (Defs.' 56.1 ¶ 16; Defs.' Mem. Ex. G, at 10–11 (first grievance) (Dkt. No. 72-7).) It also alleges that Plaintiff "t[h]ought [Puershner] was going to rape [him] because they rip[ped] off [his] un[der]wear [and] slam[med] [him] to the wall" and that he "did not ha[ve] on any cloth[e]s until [he] got up [in the morning]." (Defs.' Mem. Ex. G, at 10.) On October 23, 2015, the Sullivan superintendent issued a decision stating:

> Grievance 22716-15 was investigated by several security supervisors and medical staff and found to be without merit. Security staff have gone on written record denying any type of misconduct. Medical staff have found minor injuries on grievant which are not indicative of being assaulted but rather from continuously dropping to his knees when being restrained and ordered to walk. Grievant had to keep being assisted back to his feet.

(*Id.* at 12.)  Defendants state that the decision was delivered to Plaintiff and that no appeal was taken.  (Defs.' 56.1 ¶¶ 18–19.)  In particular, according to Rachael Seguin ("Seguin"), a DOCCS record custodian, and Corey J. Proscia, Jr. ("Proscia"), a grievance supervisor at Sullivan, there is no record that Plaintiff appealed the decision.  (Decl. of Rachael Seguin ("Seguin Decl.") ¶ 6 (Dkt. No. 72-1); Decl. of Corey J. Proscia, Jr. ("Proscia Decl.") ¶¶ 6, 9 (Dkt. No. 72-2).)  Further, the "appeal statement" portion of the superintendent's decision, which is blank, also indicates that Plaintiff did not file an appeal.  (Defs.' Mem. Ex. G, at 12.)  Plaintiff contends that he "never" received a "reply back from the grievance supervisor and . . . did not know what to do."  (June 19, 2019 Letter from Lionel King to Court (Dkt. No. 103).)  Plaintiff also alleges that copies of the first grievance were sent to the DOCCS Inspector General, the DOCCS Commissioner, the "Prison Legal Service," and the "Prisoner Rights Project."  (Compl. 8.)

The second grievance, SUL-22158-15, dated September 30, 2015, alleges that on September 15, 2015, Daddezio slapped Plaintiff on the face.  (Defs.' 56.1 ¶ 20; Defs.' Mem. Ex. G, at 2–3 (second grievance).)  On November 5, 2015, the Sullivan superintendent issued a decision finding that Daddezio denied the allegation and that the Plaintiff failed to provide additional information or witnesses.  (Defs.' Mem. Ex. G, at 4.)  Defendants state that the decision was delivered to Plaintiff and that no appeal was taken.  (Defs.' 56.1 ¶¶ 23, 24.)  According to Seguin and Proscia, there is no record that Plaintiff appealed the grievance.  (Seguin Decl. ¶ 6; Proscia Decl. ¶¶ 7, 9.)  The "appeal statement" portion of the superintendent's decision, which is blank, also indicates that Plaintiff did not file an appeal.  (Defs.' Mem. Ex. G, at 4.)

The third grievance, SUL-22190-15, dated October 5, 2015, alleges that, after Plaintiff was assaulted by Daddezio, Puershner, and Stauch, Nurse Chiocchi failed to provide Plaintiff

with adequate medical care. (Defs.' 56.1 ¶ 25; Defs.' Mem. Ex. G, at 5 (third grievance).) On October 19, 2015, the Superintendent issued a decision finding that Nurse Chiocchi assessed and treated Plaintiff with Tylenol. (Defs.' Mem. Ex. G, at 9.) Defendants state that the decision was delivered to Plaintiff and that no appeal was taken. (Defs.' 56.1 ¶¶ 28–29.) According to Seguin and Proscia, there is no record that Plaintiff appealed the grievance. (Seguin Decl. ¶ 6; Proscia Decl. ¶¶ 8–9.) The "appeal statement" portion of the superintendent's decision, which is blank, also indicates that Plaintiff did not file an appeal. (Defs.' Mem. Ex. G, at 9.)

In his deposition, when asked whether he fully appealed his grievances, Plaintiff testified:

> Q: And after you got no results, did you file a grievance or grieve to
> the superintendent?
> A: I can't remember.
> Q: Did you file to the CORC?
> A: I believe I wr[o]te to them. I wr[o]te to Ms. Bellamy concerning
> the grievance. And I don't remember.

(King Dep. 103.) In some 48 other instances unrelated to the allegations at issue in this Action, Plaintiff successfully filed grievances and fully appealed them to the CORC. (Defs.' 56.1 ¶¶ 32–33; Seguin Decl. ¶ 4; Defs.' Mem. Ex. F (list of fully exhausted grievances) (Dkt. No. 72-6).)

B. Procedural History

The Complaint was filed on February 22, 2017. (Compl. (Dkt. No. 1).) The Court granted Plaintiff's request to proceed in forma pauperis ("IFP") on March 1, 2017. (Dkt. No. 5.) On March 27, 2017, the Court issued an order directing service on Defendants. (Dkt. No. 7.) On July 27, 2017, Plaintiff informed the Court that while "his original [C]omplaint named a correctional officer Peach as a defendant," he has since "determined that the name of the defendant is Beach." (Dkt. No. 20). The Court issued a second Order directing service on Beach. (Dkt. No. 21.)

On September 24, 2018, Defendants filed the instant Motion for Summary Judgment. (Not. of Mot. (Dkt. No. 71); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 72).) Plaintiff filed a response in opposition on October 15, 2018. (Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 74).) On October 31, 2018, Defendants filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 75).)

On May 1, 2019, Defendants belatedly filed the required notice for pro se litigants pursuant to Local Civil Rule 56.2, (Dkt. No. 95), and statement of material facts pursuant to Local Civil Rule 56.1, (Defs.' 56.1 (Dkt. No. 96)). In light of this belated filing, on June 10, 2019, the Court issued an Order granting Plaintiff the opportunity to file a second response in opposition to the Motion by July 12, 2019. (Dkt. No. 102.) Plaintiff did not file a second memorandum in response. Rather, on June 25, 2019, the Court received a letter from Plaintiff, dated June 19, 2019, stating that, "when [he] file[d] the grievance" regarding Puershner, Beach, Barlow, and Nurse Chiocchi, he "never" received a "reply back from the grievance supervisor and . . . did not know what to do." (June 19, 2019 Letter from Lionel King to Court (Dkt. No. 103).) On August 6, 2019, the Court issued an Order deeming the Motion fully submitted. (Dkt. No. 104.) On August 27, 2019, the Court received an undated letter from Plaintiff reiterating the allegations made in the Complaint and further alleging a claim of sexual assault. (Aug. 27, 2019 Letter from Lionel King to Court ("August 27, 2019 King Letter") (Dkt. No. 105).) On August 29, 2019, Plaintiff filed a letter attaching the letter previously docketed at Dkt. No. 103. (Dkt. No. 106.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion," the nonmovant must "create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014)

(quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc*., 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments

of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010).  Even where a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter summary judgment."  *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016), and a court "'must . . . construe[]" the pro se litigant's submissions "liberally and interpret[] [them] to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006)).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment."  *Houston*, 27 F. Supp. 3d at 351 (citations, alterations, and quotation marks omitted).

### B. Analysis

Defendants seek dismissal of the Complaint in its entirety on the ground that Plaintiff has failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*  (*See* Defs.' Mem. 9–15.)  Defendants additionally seek dismissal on the merits as to Plaintiff's inadequate medical care claim against Nurse Chiocchi. (*Id.* at 16–23.)  Defendants do not seek dismissal on the merits as to Plaintiff's assault claim.  (*Id.* at 1 n.2, 4 nn.4–5.)  The Court addresses each argument to the extent necessary.

1.  Applicable Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citation omitted).  The exhaustion requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and includes actions for monetary damages even if monetary damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001).  Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out."  *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations, alteration, and quotation marks omitted).  Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (citations, alteration, and quotation marks omitted); *see also Mateo v. Alexander*, No. 08-CV-8797, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010) ("When a prisoner does not properly exhaust his administrative remedies before filing suit, the action *must* be dismissed." (citing *Burgos v. Craig*, 307 F. App'x 469, 470 (2d Cir. 2008))).

However, the PLRA contains a "textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.*  Available "grievance procedures . . . are [those] capable of use to obtain some relief for the action complained of."  *Id.* at 1859 (citation and quotation marks omitted).  In *Ross*, the

Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* An administrative remedy is unavailable: (1) where "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can discern or navigate it"; or (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. It bears noting, however, that the "three circumstances discussed in *Ross* do not appear to be exhaustive," *Williams*, 829 F.3d at 123–24 & n.2, but rather "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

### 2. Applicable Grievance Program

The grievance program applicable here is the DOCCS Inmate Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701 *et seq.* The IGP generally provides for a three-step grievance process. At the first step, an inmate submits a written grievance to the Inmate Grievance Review Committee ("IGRC"), which attempts to resolve the issue "informally," and if there is no resolution, "conduct[s] a hearing to answer the grievance or make a recommendation to the superintendent." *Id.* § 701.5(b). If the IGRC's determination is adverse to the inmate, at the second step the inmate appeals to the prison superintendent. *See id.* § 701.5(c). And if the superintendent's determination is adverse to the inmate, at the third and final step the inmate appeals to the Central Office Review Committee ("CORC"). *See id.* § 701.5(d). "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5,

2008).  That is, only after completing all three steps of the IGP may an inmate initiate suit, *see*

*Ross*, 136 S. Ct. at 1856; *Williams*, 829 F.3d at 122, provided no exception to exhaustion applies.

However, grievances claiming harassment by prison officials "are of particular concern to

the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the

grievance goes directly to the facility superintendent.  7 N.Y.C.R.R. § 701.8.  The superintendent

"shall promptly determine whether the grievance, if true, would represent a bona fide case of

harassment," *id.* § 701.8(c), namely, a "grievance[] that allege[s] employee misconduct meant to

annoy, intimidate or harm an inmate," *id.* § 701.2(e).  If it is not determined to be a bona fide

case of harassment, the grievance is returned to the IGRC for normal processing.  *Id.* § 701.8(c).

If it is a bona fide harassment issue, however, the superintendent must then initiate or request an

investigation, *id.* § 701.8(d), and render a decision within 25 calendar days, *id.* § 701.8(f).  If the

superintendent's decision is adverse to the grievant, or if the superintendent fails to timely render

a decision, the grievant may appeal to the CORC.  *Id.* §§ 701.8(g), (h).

Finally, where an inmate complains of sexual abuse or harassment, "the exhaustion

requirement . . . is different than that for other types of complaints."  *Sheffer v. Fleury*, No. 18-

CV-1180, 2019 WL 3891143, at *3 (N.D.N.Y. Aug. 19, 2019).  DOCCS Directive 4040, revised

in May 2014, provides in relevant part:

> The Department has zero tolerance for sexual abuse and sexual harassment.
> Consistent with this policy and the Prison Rape Elimination Act (PREA) Standards
> (28 C.F.R. § 115.52(a)), an inmate is not required to file a grievance concerning an
> alleged incident of sexual abuse or sexual harassment to satisfy the [PLRA]
> exhaustion requirement . . . before bringing a lawsuit regarding an allegation of
> sexual abuse as long as the matter was reported as set forth below.  For purposes of
> the [PREA] . . . and the exhaustion requirement, any allegation concerning an
> incident of sexual abuse or sexual harassment . . . shall be deemed exhausted if
> official documentation confirms that:
>
> > (1) an inmate who alleges being the victim of sexual abuse or sexual
> > harassment reported the incident to facility staff; in writing to Central Office

> Staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA . . . ; or to the Department's Office of the Inspector General; or
>
> (2) a third party reported that an inmate is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation.

A sexual abuse or sexual harassment complaint may be submitted at any time . . . . Acceptance of a late complaint does not waive the applicable statute of limitations with respect to any related lawsuit.

Any inmate grievance filed regarding a complaint of sexual abuse or sexual harassment shall immediately be reported by the IGP Supervisor to the Watch Commander for further handling in accordance with Departmental policies. The complaint shall be deemed exhausted upon filing for PLRA purposes. If the grievance does not set forth any additional matters that require a response, the grievance shall be closed.

7 N.Y.C.R.R. § 701.3(i); *see also Sheffer*, 2019 WL 3891143, at *3 (same).

### 3. Application

#### a. Claims of Physical Assault and Inadequate Medical Care

Plaintiff's Complaint alleges that he was repeatedly physically assaulted by Sullivan correction officers, causing him injury, and was thereafter provided with inadequate medical care by Nurse Chiocchi. (*See generally* Compl.) Because these claims allege staff misconduct, they are governed by the expedited exhaustion process set out in 7 N.Y.C.R.R. § 701.8. It is undisputed that Plaintiff filed three grievances relating to the allegations contained in the Complaint. (*See* Defs.' Mem. Ex. G, at 10 (first grievance); *id.* at 2 (second grievance); *id.* at 5 (third grievance); *see also* Compl. 7 (indicating that Plaintiff filed a grievance); King Dep. 101 (stating that Plaintiff filed grievances relating to the allegations at issue here).) It is also undisputed that these grievances were referred to the Sullivan superintendent, (Proscia Decl. ¶ 5), who found adversely to Plaintiff in each case, (*see* Defs.' Mem. Ex. G, at 12 (decision denying first grievance); *id.* at 4 (decision denying second grievance); *id.* at 9 (decision denying

third grievance)).  Finally, the Court concludes that there is no genuine dispute that Plaintiff

failed to file an appeal to the CORC as to any of the three grievances.  Although Plaintiff

testified that he "believe[s]" he wrote to CORC, (King Dep. 103), he failed to explain the basis

for that testimony and, further, twice stated that he "can't remember" if he did so, (*id.*).

Moreover, the record evidence strongly indicates that Plaintiff did not file an appeal to the

CORC, (*see* Seguin Decl. ¶ 6 ("CORC does not have a record that Plaintiff appealed [the

relevant] grievance numbers . . . to CORC."); Proscia Decl. ¶ 9 ("Sullivan's Inmate Grievance

office has no record of any appeal by Plaintiff of the denial of [the relevant] grievances . . . .");

Defs.' Mem. Ex. G, at 4, 9, 12 (blank "appeal statement" as to each denial of grievance by the

superintendent).)  And while Plaintiff alleges that he wrote letters of complaint to the DOCCS

Inspector General, the DOCCS Commissioner, the Justice Department, the "Prison Legal

Service," and the "Prisoner Rights Project," (Compl. 8), it is clear that complaints to outside

entities do not satisfy the PLRA's exhaustion requirements.  *See McGowan v. Schuck*, No. 12-

CV-6557, 2018 WL 4354212, at *4 (W.D.N.Y. Sept. 12, 2018) (noting that "decisions in this

circuit have repeatedly held that complaint letters to the DOCCS commissioner or the facility

superintendent do not satisfy the PLRA's exhaustion requirements" (citation and quotation

marks omitted) (collecting cases)); *see also Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017)

(holding that the plaintiff's "pursuit of alternative relief from the Inspector General's Office and

Commission of Correction did not . . . excuse[] [him] from complying with th[e] ordinary

[inmate grievance] procedures").  The Court thus concludes that there is no genuine dispute of

material fact that, as to Plaintiff's claims of physical assault and inadequate medical care,

Plaintiff did not fully exhaust his administrative remedies as mandated by the PLRA.

In response, Plaintiff does not argue that he did in fact satisfy the exhaustion requirements set out in 7 N.Y.C.R.R. § 701.8. (*See generally* Pl.'s Mem.) Rather, Plaintiff argues that was sexually assaulted and, therefore, that he was subject only to the more limited exhaustion requirements of DOCCS Directive 4040, which he alleges he satisfied. (*Id.*) The Court addresses this issue *infra* Section II.B.3.b.

Focusing on Plaintiff's claims of physical assault and inadequate medical care, the only remaining question is whether there is a genuine dispute of material fact that an exception to the exhaustion requirement applies. Here, there is no record evidence that the IGP is a "simple dead end" and "unable" to provide relief to Plaintiff, *Ross*, 136 S. Ct. at 1859, or that it is "so opaque that it" is "incapable of use" such that "no ordinary prisoner can discern or navigate it," *id.* As Defendants point out, Plaintiff properly adhered to the IGP's exhaustion requirements in some 48 other instances, both before and after the grievances at issue in this Action, in which he filed grievances and fully appealed them to the CORC. (Seguin Decl. ¶ 4; Defs.' Mem. Ex. F (list of fully exhausted grievances).) *See Davis v. Grant*, No. 15-CV-5359, 2019 WL 498277, at *8 (S.D.N.Y. Feb. 8, 2019) (holding that there was no dispute of fact as to whether the grievance process was "available" to the plaintiff where he "successfully used the IGP, filing eight grievances while at [the relevant facility] between 2014 and 2017, appealing 39 grievances to CORC since he has been in prison, and having served as a grievance representative himself" (citations omitted)); *Mckinney v. Prack*, 170 F. Supp. 3d 510, 516–17 (W.D.N.Y. 2016) (holding that there was no dispute of fact as to whether the grievance process was "available" to the plaintiff where the record showed that he "appealed and exhausted approximately 20 grievances during his 29 years of incarceration"). Plaintiff argues in response that he "never" received a "reply back from the grievance supervisor and . . . did not know what to do," (June 19, 2019

Letter from Lionel King to Court), but this conclusory and self-serving argument is both denied

by Defendants, who have submitted a sworn declaration stating that the superintendent's

decisions denying Plaintiff's grievances were delivered to him, (Proscia Decl. ¶¶ 6–9 (stating

that the denials were "delivered to plaintiff as indicated by the diagonal mark on the top right

corner" of the page and "were sent to Plaintiff directly to his cell location . . . on the date of the

. . . decision")), and belied by the record, which shows that Plaintiff is intimately familiar with

the IGP's requirements, (*see* Defs.' Mem. Ex. F (list of fully exhausted grievances); *see also id.*

Ex. H (example of grievance, filed by Plaintiff in April 2014 while incarcerated at Sullivan,

alleging improper medical care, that was fully appealed to the CORC).)  In any event, even

assuming that Plaintiff did not receive the superintendent's decisions denying his three

grievances, he "could have . . . sought to appeal [them] when he did not receive a . . . response."

*Mckinney*, 170 F. Supp. 3d at 517 (citations omitted); *see also Parker v. McIntyre*, No. 11-CV-

865, 2014 WL 5432153, at *3 (W.D.N.Y. Oct. 27, 2014) ("Courts repeatedly have dismissed

complaints . . . when an inmate confronted with facility inaction fails to proactively grieve a

claim to completion." (quotation marks omitted) (collecting cases)); 7 N.Y.C.R.R. § 701.8(g)

("If the superintendent fails to respond within the required 25 calendar day time limit the

grievant may appeal his/her grievance to CORC."); *cf. Terry v. Hulse*, No. 16-CV-252, 2018 WL

4682784, at *9 (S.D.N.Y. Sept. 28, 2018) (holding that there existed a dispute of material fact as

to whether the grievance process was "available" to the plaintiff where the plaintiff "consistently

alleged" that "he wrote at least three grievances" and "gave those grievances to officers to file

for him," where he "testified that he kept a copy" but that "his property was either destroyed or

taken," and where he later "filed another grievance regarding the unanswered grievances").  Nor

is there any indication in the Complaint, Plaintiff's submissions, or the remaining record that

Plaintiff was "thwart[ed]" from appealing the superintendent's adverse decisions because of prison officials' "machination, misrepresentation, . . . intimidation," or "threat[s]." *Ross*, 136 S. Ct. at 1860.

Therefore, the Court concludes that there is no genuine dispute of material fact (1) that Plaintiff failed to fully exhaust his administrative remedies as required by the IGP and (2) that no exception to the exhaustion requirement applies. *See Haywood v. Fuller*, No. 18-CV-1097, 2019 WL 1639743, at *6 (N.D.N.Y. Apr. 16, 2019) (granting summary judgment based on failure to exhaust where the record showed that the "plaintiff failed to properly appeal his grievance to the CORC as required by the IGP"), *adopted by* 2019 WL 2442142 (N.D.N.Y. June 12, 2019); *Jackson v. Downstate Corr. Fac.*, No. 16-CV-0267, 2018 WL 3650136, at *6 (S.D.N.Y. July 31, 2018) (holding that the "[p]laintiff's failure to appeal to the CORC constitutes a failure to exhaust his administrative remedies" (collecting cases)); *cf. Terry*, 2018 WL 4682784, at *7–10 (denying summary judgment based on failure to exhaust where, although "it [was] undisputed that [the] [p]laintiff did not complete the requisite three-step grievance process before filing his lawsuit," there was a genuine dispute of material fact as to whether an exception to exhaustion applied).

Accordingly, Defendants' Motion for Summary Judgment is granted.

### b. Newly Raised Claim of Sexual Assault

As noted, in his memorandum in opposition to Defendants' Motion, Plaintiff states that he was sexually assaulted. In particular, Plaintiff that the "conduct described" in the Complaint "was not limited to Defendants 'ripping' off [his] underwear," (Pl.'s Mem. 1–2); that unnamed Defendants "stripped [him] and spread his legs with Defendant[s] on either side of him," (*id.* at 2); and that "additional Defendants sp[a]t on [his] private parts before touching his anus with

foreign objects," (*id.*).  Plaintiff also states that "sexual assault is not something readily complained about due to embarrassment . . . , but the alleged threat of sexual assault in this case was actually realized." (*Id.* at 3.)  Further, in a letter filed after Defendants' Motion was fully submitted, Plaintiff states that his clothes were ripped off "like if [he] was going to get raped," and that "both of [his] legs [were] spread so [wide] . . . like if [he] was going to get fuck[ed] in [his] ass." (August 27, 2019 King Letter.)

As an initial matter, these allegations are, as Defendants point out, (Defs.' Reply 2–3), somewhat thin.  Plaintiff does not identify the individuals allegedly responsible for the alleged sexual assault, nor does he indicate when or where the alleged sexual assault took place.  More importantly, these allegations were, as Plaintiff admits, (Pl.'s Mem. 1–2), not raised in the Complaint.  The Complaint alleges, as relevant here, only Plaintiff was taken to a room — later clarified as a room used "for one-to-one [mental health] monitoring" (King Dep. 73) — in which Puershner and Barlow "held [Plaintiff] down" and "began ripping off [his] cloth[e]s," including his pants and "jockstrap," thus causing Plaintiff to "fear[] [that he] was about to be sexually assaulted." (Compl. 6.)  Yet, Plaintiff then alleges, "[h]owever, after [his] cloth[e]s were removed," Barlow, Puershner, and Mokowksi "left the room." (*Id.*)

"A party generally may not assert a cause of action for the first time in response to a summary judgment motion." *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 440 (S.D.N.Y. 2016) (citations and quotation marks omitted) (collecting cases); *see also Lyman v. CSX Tramp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (finding that the district court did not abuse its discretion in declining to consider "new theories of liability" raised for the first time in opposition to summary judgment); *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) ("Because this theory of excessive force is raised for the first time in [the]

[p]laintiff's opposition to [the] [d]efendants' motion for summary judgment, [the Court] need not consider it here. It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment." (citations omitted)), *reconsideration denied*, 2017 WL 4155401 (S.D.N.Y. Sept. 18, 2017). The rule is no different for pro se plaintiffs. *See Wright v. Jewish Child Care Ass'n of N.Y.*, 68 F. Supp. 3d 520, 529 (S.D.N.Y. 2014) (holding that even pro se plaintiffs may not assert new claims in opposition to a motion for summary judgment). "However, under Federal Rule of Civil Procedure 15(b), the Court may consider claims outside those raised in the pleadings 'so long as doing so does not cause prejudice' to defendants." *Simpson*, 159 F. Supp. 3d at 440 (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000)). "Accordingly, in contrast to claims that are entirely new, claims that are related to or are mere variations of previously pleaded claims may be raised on a motion for summary judgment where the defendant was clearly on notice from the complaint and was not unfairly prejudiced." *Id.* (citation, quotation marks, and alterations omitted); *see also Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 99 (S.D.N.Y. 2010) ("Courts also consider the extent to which the new claims are related to the existing ones and whether a party has had prior notice of a proposed new claim.").

Here, the Court concludes that the Complaint, even when "construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]," *Sykes*, 723 F.3d at 403 (citation and quotation marks omitted), does not plausibly allege a claim of sexual assault. Indeed, the Complaint indicates that a sexual assault did *not* occur. (*See* Compl. 6 ("I feared I was about to be sexually assaulted . . . . However, after my cloth[e]s were removed the[y] . . . left the room.").) Nor does the Complaint contain any of the factual detail included in Plaintiff's later submissions, such as the allegation that individuals touched and spat on his genitals. Indeed,

Plaintiff himself appears to acknowledges that the Complaint does not plead a claim of sexual assault when he "admit[s] that the physical beating complained of was not limited to Defendants 'ripping' off [his] underwear." (Pl.'s Mem. 2.) Moreover, the issue of a possible sexual asualt was raised only vaguely and in passing in Plaintiff's deposition. (*See* King Dep. 74 (stating only that "they started stripping me" before moving on to focus on Plaintiff's allegations that Defendants attempted to break Plaintiff's wrists and shoulder).) The Court thus concludes that the Complaint's undeveloped allegation of a "feared" sexual assault, (Compl. 6), did not reasonably place Defendants on notice that Plaintiff intended to pursue a sexual assault claim. *See Terbush v. Mitchell*, No. 15-CV-1339, 2017 WL 663198, at *7 (D. Conn. Feb. 17, 2017) (concluding that newly raised allegations of injuries were not raised in the pro se plaintiff's pleadings, and were "referenced only in passing during [the] plaintiff's deposition," and, therefore, that the "[d]efendant would be prejudiced if the Court were to now consider such a claim"); *see also Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (noting that "the central purpose of a complaint is to provide the defendant with notice of the claims asserted against it"); *cf. Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 89 (2d Cir. 2010) ("While [the plaintiff's] complaint might have been clearer in articulating this [new] theory of retaliation, we conclude that it was sufficient to place defendants on notice that she intended to pursue such an argument.").

Accordingly, the Court will not consider Plaintiff's belatedly raised sexual assault claim at this time, as it "would open up an extensive area of factual inquiry that until now had been beyond the scope of his current claims and thus beyond the area in which [D]efendants had any reason to seek discovery." *Wesley v. Muhammad*, No. 05-CV-5833, 2010 WL 1541536, at *3 (S.D.N.Y. Apr. 13, 2010); *see Green v. Schmelzle*, No. 11-CV-6063, 2019 WL 4276994, at *6

(W.D.N.Y. Sept. 10, 2019) (declining to address pro se plaintiff's newly raised claims in motion for summary judgment); *Wright*, 68 F. Supp. 3d at 529 (same). However, in light of the "special solicitude" due pro se litigants, *Harris*, 818 F.3d at 57, the Court exercises its discretion to grant Plaintiff an opportunity to amend his Complaint (which to this point has not yet been amended) for the limited purpose of adding a claim of sexual assault, should he so choose. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("[I]t is within the sound discretion of the district court to grant or deny leave to amend."); *cf. Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436, 450 (N.D.N.Y. 2013) (denying pro se plaintiff opportunity to amend where discovery had closed and, "[a]t this late date in the proceedings, it would unnecessarily delay the action and would be prejudicial to the [d]efendant"). Should Plaintiff amend, Defendants will have the opportunity to contest the claim and, if necessary, take discovery.[3]

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. The Court dismisses Plaintiff's claims of physical assault and inadequate medical care. Dismissal is with prejudice.

---

[3] Because the Court does not consider Plaintiff's belatedly raised sexual assault claim, it does not offer a view as to whether Plaintiff has exhausted that claim as required by DOCCS Directive 4040. The Court notes, however, that even if Plaintiff has exhausted a putative sexual assault claim, that would not alter the Court's conclusion here that Plaintiff has failed to exhaust his separate claims of physical assault and inadequate medical care. *See Johnson v. Conley*, No. 17-CV-70, 2018 WL 4224076, at *6 (D. Conn. Sept. 5, 2018) (dismissing all claims for failure to exhaust "except for those that were within the scope of [the] plaintiff's PREA complaint"), *appeal dismissed*, No. 18-2933 (2d Cir. Nov. 26, 2018); *Allen v. Graham*, No. 16-CV-47, 2017 WL 9511168, at *7 (N.D.N.Y. Sept. 26, 2017) (denying summary judgment on sexual assault claim where the plaintiff complied with Directive 4040, but that because Directive 4040 is "solely for sexual abuse and sexual harassment claims, [the] plaintiff's complaint to [the prison's] mental health staff would not exhaust other claims . . . , such as an Eighth Amendment excessive force claim"), *adopted by* 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017).

The Court grants Plaintiff an opportunity to amend his Complaint to add a claim of sexual assault. Plaintiff must file an amended complaint within 30 days of the date of this Opinion. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the factual allegations and exhibits related to the putative sexual assault claim that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, Plaintiff will lose his opportunity to amend and Action will be closed.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 71), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED: September **18**, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE